### UNITED STATES DISTRICT COURT
### DISTRICT OF MARYLAND

ALBERT CURTIS MILLS,

    Plaintiff,

    v.

JAMIE FARRIS,                                     Civil Action No. TDC-22-1640
*Adjustment Hearing Officer*, and
CODY GILPIN, *Correctional Officer*,

    Defendants.

### MEMORANDUM OPINION

    Albert Curtis Mills, an inmate incarcerated at the North Branch Correctional Institution ("NBCI") in Cumberland, Maryland, has filed this civil action pursuant to 42 U.S.C. § 1983 in which he alleges that: (1) he was denied due process when an adjustment hearing was held *in absentia*; and (2) his confinement to disciplinary segregation violated his constitutional rights because there were pests in his cell and the conditions exacerbated his mental health illness. Defendants Hearing Officer Jamie Farris and Correctional Officer Cody Gilpin have filed a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment, which Mills has opposed. Having reviewed the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motion to Dismiss will be GRANTED.

### BACKGROUND

    In the Complaint, Mills alleges that he was supposed to be served with a Notice of Inmate Rule Violation ("NOIRV") on July 4, 2019, but that the NOIRV was not served, and the adjustment hearing on the alleged violation was held in his absence on July 11, 2019. He asserts that at the

hearing, Correctional Officer Cody Gilpin ("Defendant Gilpin") falsely stated that Mills had refused to attend the hearing, and that Hearing Officer Farris accepted that claim and then found Mills guilty of the rule violation and sentenced him to 30 days of disciplinary segregation.

According to Defendants, the events described by Mills were preceded by a July 2, 2019 adjustment hearing relating to an earlier NOIRV issued because Mills allegedly refused to be handcuffed to effectuate a cell move recommended by Mills's mental health treatment team. Although Mills stated at the hearing that he was a special needs unit inmate in a single cell and had not wanted to change cells, he did not deny refusing the orders to be handcuffed and was found guilty by Hearing Officer Farris of refusing to obey an order. He was sanctioned with 15 days of disciplinary segregation beginning on June 20, 2019 and ending on July 4, 2019.

According to Defendants, on July 4, 2019, Correctional Officer II Larry Gilpin, a different correctional officer from Defendant Gilpin, went to Mills's cell to return Mills to the general population. When Mills refused to be handcuffed for the escort, he was issued an NOIRV for disobeying an order and was placed in administrative segregation pending the adjustment hearing. Defendants also assert that on that same day, a correctional officer attempted to serve the NOIRV on Mills, but he refused to sign for it. On July 11, 2019, another correctional officer went to Mills's cell to escort him to the adjustment hearing, but he refused to attend or to sign a Waiver of Appearance Form. The correctional officer then signed the waiver form to document the refusal to attend. When that information was reported to Hearing Officer Farris, the hearing was conducted *in absentia*, and Hearing Officer Farris found Mills guilty and sanctioned him to 30 days of disciplinary segregation.

Mills then appealed the result of the July 11, 2019 adjustment hearing on the grounds that he never refused to attend the hearing. Although the Warden affirmed the decision on appeal,

2

Mills further appealed the decision to the Division of Correction, Office of the Commissioner. There, Chief Hearing Officer Kimberly Stewart reversed the conviction and vacated Mills's disciplinary segregation sanction. Chief Hearing Officer Stewart found the record insufficient "to support a finding that inmate Mills voluntarily waived his right to appear at his disciplinary hearing." Defs.' App'x 27, ECF No. 11-3.

However, Mills states that by the time the conviction was reversed, he had already been in segregation as a result of the charge for most of the 30 days, specifically 28 days. He further asserts that his cell while in segregation was "corrupt with pests," Compl. at 13, ECF No. 1, and that the conditions of confinement while in segregation exacerbated the symptoms of his mental illness.

Construed liberally, the Complaint asserts the following claims (1) that Mills's right to due process of law under the Fourteenth Amendment to the United States Constitution was violated when the July 11, 2021 was held *in absentia* and he was sanctioned with disciplinary segregation; (2) that the failure to arrange for Mills to be present at the adjustment hearing violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101–12213 (2018), and the Rehabilitation Act, 29 U.S.C. § 794 (2018), because he has a mental health condition and was denied a reasonable accommodation to allow him to access a "prison program," consisting of the adjustment hearing, Compl. at 16; and (3) that the conditions of confinement while he was in segregation violated his right under the Eighth Amendment to be free from cruel and unusual punishment. Mills seeks compensatory and punitive damages.

## DISCUSSION

In their Motion, Defendants seek dismissal under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, summary judgment under Rule 56. Defendants argue that (1) they are entitled

to immunity under the Eleventh Amendment for any claims asserted against them in their official capacities; (2) the Eighth Amendment conditions-of-confinement claim fails because Mills did not exhaust administrative remedies as to that claim; and (3) the allegations and record evidence are insufficient to sustain Mills's due process, ADA, Rehabilitation Act, and Eighth Amendment claims. Defendants also assert defenses of absolute quasi-judicial and prosecutorial immunity and qualified immunity from claims asserted against them in their personal capacity.

## I.      Legal Standards

To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although courts should construe pleadings of self-represented litigants liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), legal conclusions or conclusory statements do not suffice, *Iqbal*, 556 U.S. at 678. The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005).

When deciding a motion to dismiss under Rule 12(b)(6), the Court generally considers only the complaint and any attached documents. *Sec'y of State for Def. v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). The Court may also consider documents attached to the motion if they are integral to the complaint and authentic. *Id.* Here, the Court finds that the NOIRV relating to the July 11, 2019 adjustment hearing, the hearing record for that adjustment hearing, and Chief Hearing Officer Stewart's ruling granting Mills's appeal are integral to the Complaint and may be considered.

4

Courts must treat such a motion as a motion for summary judgment where other materials outside the pleadings are considered and not excluded. Fed. R. Civ. P. 12(d). Before converting a motion to dismiss to one for summary judgment, courts must give the nonmoving party "a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* "Reasonable opportunity" has two requirements: (1) the nonmoving party must have some notice that the court is treating the Rule 12(b)(6) motion as a motion for summary judgment; and (2) the nonmoving party must be afforded "a reasonable opportunity for discovery" to obtain information essential to oppose the motion. *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985).

Here, the notice requirement has been satisfied by the title of Defendants' Motion. To show that a reasonable opportunity for discovery has not been afforded, the nonmoving party must file an affidavit or declaration under Rule 56(d), or an equivalent filing, explaining why "for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d); *see Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244–45 (4th Cir. 2002). In responding to the Motion, Mills has asserted that he needs discovery consisting of his "medical and psychological and psychiatric records from YesCare Corporation and Centurion Managed Care and North Branch Correctional Institution and Division of Correction and Department of Public Safety and Correctional Services." Opp'n at 1–2, ECF No. 13. Mills further asserts that he needs discovery on how his conditions were affected by his adjustment proceedings and assignment to segregation. However, Mills does not explain how or why this information is necessary for him to be able to respond to the Motion. Mills also seeks surveillance video from his housing tier from July 11, 2019, which he asserts will show that he was not provided with the NOIRV and was not taken to the adjustment hearing.

5

Upon review of the Complaint, the Court finds that the claims can and will be resolved based on the Motion to Dismiss, without consideration of exhibits not integral to the Complaint. Accordingly, the requested discovery is not necessary to the resolution of the Motion and will not be authorized.

## II.   Eleventh Amendment Immunity

Mills's claims against Defendants in their official capacities are barred by Eleventh Amendment immunity. Suits against state officials or employees in their official capacities are suits against the State itself. *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989). Under the Eleventh Amendment to the Constitution, absent consent, a state, its agencies, and departments are immune from suits in federal court brought by its citizens or the citizens of another state. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) ("It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment."). While the State of Maryland has waived its sovereign immunity for certain types of cases brought in state courts, *see* Md. Code Ann., State Gov't § 12–201(a) (LexisNexis 2021), it has not waived its immunity under the Eleventh Amendment to suit in federal court. Thus, Mills's claims against Defendants in their official capacities are barred by the Eleventh Amendment and will be dismissed.

## III.   ADA and the Rehabilitation Act

Mills alleges that his rights under the ADA and the Rehabilitation Act were violated when he was denied access to his July 11, 2019 adjustment hearing. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The Rehabilitation Act

provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a). These statutes generally are construed to impose the same requirements due to the similarity of their language. *Baird ex rel. Baird v. Rose*, 192 F.3d 462, 468 (4th Cir. 1999).

To establish a violation of Title II of the ADA or the Rehabilitation Act, plaintiffs must show that:  (1) they have a disability; (2) they were either excluded from participation in or denied the benefits of a public entity's services, programs, or activities for which they were otherwise qualified; and (3) the exclusion, denial of benefits, or discrimination was by reason of the disability.  *See Nat'l Fed'n of the Blind v. Lamone*, 813 F.3d 494, 502–03 (4th Cir. 2016). "Discrimination" barred by Title II includes "a failure to make reasonable modifications" that are "necessary" to provide a disabled individual with "full and equal enjoyment" of the facility's services.  *Id.* at 461.  Title II of the ADA applies to state prisons.  *See Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998) (stating that "[s]tate prisons fall squarely within the statutory definition of 'public entity . . . .'").

Mills's claims fail for two reasons.  First, because the ADA and the Rehabilitation Act apply solely to public entities, Mills's claims under these statutes cannot proceed against the individually named Defendants.  *See* 42 U.S.C. § 12131(1) (stating that "[t]he term 'public entity' means . . . any State or local government [or] any department, agency, special purpose district, or other instrumentality of a State or States or local government"); *Baird*, 192 F.3d at 471 (upholding the dismissal of ADA claims against individuals because Title II recognizes a cause of action only against public entities, not private individuals); *Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir.

7

2002) (joining the Fifth, Eighth, and Eleventh Circuits in holding that "a plaintiff cannot bring an action under 42 U.S.C. § 1983 against a State official in her individual capacity to vindicate rights created by Title II of the ADA or section 504 of the Rehabilitation Act").

Second, the allegations in the Complaint provide no basis to conclude that the failure to arrange for Mills to attend the adjustment hearing was because of a disability or a failure to provide a reasonable accommodation to allow him to attend. Even assuming that Mills's mental health condition qualifies as a disability under these statutes, he has not alleged facts that would support a conclusion that Hearing Officer Farris, Defendant Gilpin, or any other correctional officer involved in the events surrounding the July 11, 2019 adjustment hearing had any intent to discriminate based on a disability. Nor has he alleged facts that would show that his mental health condition would prevent him from attending an adjustment hearing such that he required some kind of reasonable accommodation that was not provided. Rather, the record demonstrates that he attended a different adjustment hearing without difficulty on July 2, 2019.

Because Defendants are not proper defendants for the ADA or Rehabilitation claims, and the allegations in the Complaint do not support plausible claims for relief under these provisions, the Court will grant the Motion to Dismiss as to the ADA and Rehabilitation Act claims.

## IV.  Due Process

Mills contends that his right to due process was violated when his disciplinary hearing was held *in absentia*, and when he was subjected to a period segregation as a result. Under the Fourteenth Amendment, certain due process protections are required where an inmate faces the loss of a liberty interest, such as the possible loss of diminution or good time credits. *See Wolff v. McDonnell*, 418 U.S. 539, 563–66 (1974); *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985). These steps include: (1) advance written notice of the charges; (2) a written

8

statement of the evidence relied on and the reasons for taking any disciplinary action; (3) a hearing at which the prisoner has the right to call witnesses and present evidence when doing so is not inconsistent with institutional safety and correctional concerns; (4) the opportunity to have non-attorney representation when the inmate is illiterate or the disciplinary hearing involves complex issues; and (5) an impartial decision-maker. *See Wolff*, 418 U.S. at 564–66, 570–71. If these procedural protections are provided, due process will be satisfied if "there was some evidence from which the conclusion of the administrative tribunal could be deduced." *Hill*, 472 U.S. at 455 (quoting *United States ex rel. Vajtauer v. Comm'r of Immigration*, 273 U.S. 103, 106 (1927)).

Although there is a factual dispute over whether Mills voluntarily waived his right to appear at the adjustment hearing, any infringement of due process rights is cured by a successful administrative appeal, because "[t]here is no denial of due process if the error the inmate complains of is corrected in the administrative appeal process." *Morissette v. Peters*, 45 F.3d 1119, 1122 (7th Cir. 1995); *see Young v. Hoffman*, 970 F.2d 1154, 1156 (2d Cir. 1992) (holding that the prisoner-plaintiff "was ultimately afforded his due process protections" because the administrative reversal of his disciplinary proceedings "cured any procedural defect that may have occurred"); *Harper v. Lee*, 938 F.2d 104, 105 (8th Cir. 1991) (finding no due process violation when the wrongful failure to permit a prisoner to offer log book evidence at a disciplinary hearing was reversed on appeal and corrected at a second disciplinary hearing, because the "administrative appeal process is part of the due process protection afforded prisoners"). Here, as Mills has acknowledged, he successfully appealed the finding of guilt entered *in absentia*, and the sentence of disciplinary segregation was vacated. Thus, there is no due process violation arising from the conduct of the adjustment hearing *in absentia.*

Mills also argues that even with the successful appeal, his due process rights were violated because he still ended up serving close to 30 days in segregation, whether administrative segregation or disciplinary segregation, in advance of and following the adjustment hearing, before the appeal was resolved.  This argument fails because, as discussed above, due process rights relating to disciplinary proceedings are limited to those proceedings that result in the loss of a liberty interest, such as a loss of good conduct credits that would lengthen the overall period of incarceration.  *See Sandin v. Conner*, 515 U.S. 472, 483-84 (1995); *Wolff*, 418 U.S. at 558.  A disciplinary proceeding resulting in a sanction of time in disciplinary segregation does not alone implicate these due process requirements absent a showing that placement in such confinement imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 477–78, 484–86.

Although Mills has generally alleged that the conditions in segregation were adverse because there were pests in his cell and the isolation adversely impacted his mental health condition, he has not described conditions that reach the level of hardship necessary to implicate due process protections.  In *Sandin*, where the plaintiff's sentence of 30 days of disciplinary segregation was overturned but the plaintiff had already served that time, the United States Supreme Court held that there was no due process violation because such segregation for that time period did not constitute "the type of atypical, significant deprivation in which a State might conceivably create a liberty interest." *Sandin*, 515 U.S. at 476, 486.  Likewise, the United States Court of Appeals for the Fourth Circuit has held that inmates have no liberty interest in avoiding, and thus no due process claim stemming from, placement in administrative segregation for six months, even though the actual conditions in segregation were markedly "more burdensome than those imposed on the general prison population," including where the inmates had claimed that

10

the segregation cells were infested with vermin, were smeared with human waste, had leaking toilets, unbearable heat, less food, and reduced out-of-cell time, and no outdoor recreation time. *Beverati v. Smith*, 120 F.3d 500, 502–04 (4th Cir. 1997). Accordingly, even if the time spent in segregation could be deemed to be the result of the adjustment hearing held *in absentia*, Mills's allegations are insufficient to support a plausible due process claim. The Motion will therefore be granted as to that claim.

## V.    Eighth Amendment

Finally, Mills has alleged that his assignment to segregation violated his Eighth Amendment rights because it exacerbated his mental illness and because his cell had a "pest infestation." Compl. at 15. Defendants argue that Mills has not alleged sufficient facts to support a claim that either of the named Defendants violated his rights under the Eighth Amendment.

The Eighth Amendment "protects inmates from inhumane treatment and conditions while imprisoned." *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) (quoting *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996)). Conditions of confinement that "involve wanton and unnecessary infliction of pain," or which "deprive inmates of the minimal civilized measure of life's necessities," may amount to cruel and unusual punishment. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). However, conditions that are merely restrictive or even harsh "are part of the penalty that criminal offenders pay for their offenses against society." *Id.* In order to establish the imposition of cruel and unusual punishment in conditions of confinement, a prisoner must prove two elements: that "'the deprivation of [a] basic human need was objectively sufficiently serious,' and that subjectively 'the officials act[ed] with a sufficiently culpable state of mind.'" *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (citation omitted). "These requirements spring from the text of the amendment itself; absent intentionality, a condition imposed on an inmate cannot

11

properly be called 'punishment,' and absent severity, such punishment cannot be called 'cruel and unusual.'" *Iko*, 535 F.3d at 238 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298–300 (1991)).

The objective prong of a conditions of confinement claim requires the prisoner to "'produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions,' or demonstrate a substantial risk of such serious harm resulting from the prisoner's unwilling exposure to the challenged conditions." *Shakka*, 71 F.3d at 166 (quoting *Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993)). Thus, "a condition of confinement that is sure or very likely to cause serious illness and needless suffering the next week or month or year" violates the Eighth Amendment, even if "the complaining inmate shows no serious current symptoms." *Helling v. McKinney*, 509 U.S. 25, 33–34 (1993); *Webb v. Deboo*, 423 F. App'x 299, 300 (4th Cir. 2011). To establish a sufficiently culpable state of mind, there must be evidence of deliberate indifference, in that a known excessive risk of harm to the inmate's health or safety was disregarded. *See Wilson v. Seiter*, 501 U.S. 294, 302–03 (1991) (applying the deliberate indifference standard to conditions of confinement claims). "[T]he test is whether the guards know the plaintiff inmate faces a serious danger to his safety and they could avert the danger easily yet they fail to do so." *Brown v. N.C. Dep't of Corr.*, 612 F.3d 720, 723 (4th Cir. 2010) (quoting *Case v. Ahitow*, 301 F.3d 605, 607 (7th Cir. 2002)).

A review of Mills's allegations establishes that he has not provided a sufficient basis to support his Eighth Amendment claim as to either of the named Defendants. There is no allegation that either named Defendant was subjectively and deliberately indifferent to Mills's needs in relation to his placement in segregation. Mills fails to allege that either named Defendant was aware that he was mentally ill, nor does he allege that either Defendant was aware or should have been aware that his assignment to a segregation cell would create a substantial risk of serious harm,

12

or that any cell he was housed in was "corrupt with pests." Compl. at 13. Without knowledge of the facts alleged by Mills, Defendants could not have drawn the inference that Mills was subjected to a risk of harm. Mills also fails to allege any facts demonstrating personal knowledge or participation of either Defendant in Mills's placement in a particular cell or in the conditions of that cell. Because Mills has failed to allege sufficient facts to support an Eighth Amendment claim relating to his confinement in a segregation cell, that claim will be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment, construed as a Motion to Dismiss, will be GRANTED. A separate Order shall issue.

Date:  September 7, 2023

THEODORE D. CHUANG
United States District Judge

13